**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ann Charles, | No. CV-25-01040-PHX-SPL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Ann Charles seeks judicial review of the denial of her application for Supplemental Security Income disability benefits under the Social Security Act, 42 U.S.C. § 405(g). Before the Court are Plaintiff's Opening Brief (Doc. 9), Defendant Commissioner of Social Security Administration's Answering Brief (Doc. 11), Plaintiff's Reply Brief (Doc. 12), and the Administrative Record ("AR") (Doc. 6). Upon review, the Court reverses the Administrative Law Judge's decision (AR at 2264–81) and remands for further proceedings.

## I.     BACKGROUND

On March 5, 2020, Plaintiff filed a Title XVI application for supplemental security income for a period beginning on March 5, 2020. (AR at 13). Her claims were initially denied November 9, 2020, and again upon reconsideration on August 26, 2021. (AR at 13). Plaintiff testified at an administrative hearing on January 19, 2022 (AR at 13, 34–62), after which the Administrative Law Judge ("ALJ") found Plaintiff was not disabled (AR at 13–27). On July 29, 2022, the Appeals Council denied Plaintiff's request for review and

adopted the ALJ's decision as the agency's final decision. (AR at 1–6). Plaintiff appealed the denial to the District Court (AR at 2342–43), and the Court vacated the ALJ's decision. (AR at 2352–56). The matter was then remanded to the ALJ for further proceedings. (AR at 2360–62). The ALJ held a remand hearing on December 11, 2024. (AR at 2291–2309). On January 22, 2025, the ALJ issued a decision and again found that Plaintiff was not disabled during the relevant time period. (AR at 2264–81). Plaintiff appealed the ALJ's decision to this Court by filing a Complaint on March 31, 2025. (Doc. 1).

The Court has reviewed the medical evidence in its entirety and will discuss the pertinent medical evidence in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following medically determinable impairments: depressive disorder, posttraumatic stress disorder, schizoaffective bipolar type, and borderline personality disorder, breast and skin cancer, lumbar degenerative disc disease, ankle dysfunction, COPD, asthma, hypothyroidism, atherosclerosis of aorta, onychomycosis, and fibromyalgia. (AR at 2267–71). Ultimately, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, since March 5, 2020, the date the application was filed." (AR at 2281).

## II.    LEGAL STANDARD

A person is considered "disabled" for the purpose of receiving social security benefits if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate

to support a conclusion. *Id*. To determine whether substantial evidence supports a decision, the Court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Id*. (citation omitted). Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520(a)). The claimant bears the burden of proof on the first four steps, and the burden shifts to the Commissioner at step five. *Id*. At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id*. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id*.

### III.    ANALYSIS

Plaintiff argues the ALJ erred by: (1) finding that Plaintiff does not meet the criteria for Medical Listings 12.03(C), 12.04(C), and/or 12.15(C); (2) assigning a residual functional capacity that is not supported by substantial evidence; and (3) failing to provide clear and convincing reasons for rejecting Plaintiff's symptom testimony. The Court will begin its analysis with Plaintiff's argument that the ALJ erred at Step Three by finding that

- 3 -

Plaintiff's conditions did not meet or medically equal the listings.

At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id*. Plaintiff contends that the ALJ erred by failing to find that her impairments met or medically equaled the Listings for schizophrenia spectrum and other psychotic disorders (12.03), depressive, bipolar and related disorders (12.04), and/or trauma- and stressor-related disorders (12.15). (Doc. 9 at 3–13). Specifically, Plaintiff argues that she meets the paragraph C criteria for these listings. (*Id.*). Plaintiff's counsel raised this argument before the ALJ at the remand hearing on December 11, 2024. (AR at 2293–96, 2307–08).

For listings 12.03, 12.04, and 12.15, the paragraph C criteria are used "to evaluate 'serious and persistent mental disorders.'" 20 C.F.R. Pt. 404 Subpt. P, App. 1 § 12.00(A)(2)(c). A mental disorder satisfies paragraph C when "there is a medically documented history of the existence of the mental disorder in the listing category over a period of at least 2 years," and the evidence shows that the disorder meets the following: (C1) "you rely, on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs of your mental disorder," and (C2) "despite your diminished symptoms and signs, you have achieved only marginal adjustment," meaning that "you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(G)(2). Plaintiff argues that she meets all requirements under paragraph C. (Doc. 9 at 3–13)

"[I]n determining whether a claimant equals a listing under step three of the Secretary's disability evaluation process, the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). "However, while an ALJ is required 'to discuss and evaluate the evidence that supports his or her conclusion,' the ALJ does not have to do so at any

particular place in his or her opinion." *De Botello v. Astrue*, No. CV 10-01203-PHX-JAT, 2011 WL 3292401, at * 8 (D. Ariz. Aug. 1, 2011) (citing *Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001)). Therefore, the Court will look at the decision as a whole to determine whether the ALJ discussed the evidence supporting the Step Three conclusion.

At Step Three, the ALJ found that Plaintiff's impairments did not satisfy the paragraph C criteria. (AR at 2273–74). For all three listings, the ALJ first found that "the claimant does not have a medically documented history of the existence of the disorder over a period of at least 2 years." (*Id.*). Following that statement, the ALJ simply listed the two additional requirements of paragraph C, without making a clear determination or providing evidence related to either. (*Id.*). Defendant does not dispute that there is evidence of mental disorders over a two-year period or that Plaintiff relies on the kind of structured treatment and support described in paragraph C1. (Doc. 11 at 8–9). Instead, Defendant argues that the ALJ did not err because the decision "discernably shows that Plaintiff failed to show marginal adjustment, the second prong of the paragraph C criteria," particularly with respect to the ALJ's RFC determination that Plaintiff could "tolerate occasional changes in a routine work setting." (*Id.* at 8–9 (citing AR at 2274)).

Thus, only the marginal adjustment requirement in paragraph C2 is at issue on appeal. The paragraph C2 criteria is satisfied when:

> [D]espite your diminished symptoms and signs, you have achieved only marginal adjustment. "Marginal adjustment" means that your adaptation to the requirements of daily life is fragile; that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life. We will consider that you have achieved only marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of your symptoms and signs and to deterioration in your functioning; for example, you have become unable to function outside of your home or a more restrictive setting, without substantial psychosocial supports (see 12.00D). Such deterioration may have necessitated a significant change in medication or other treatment. Similarly, because of the nature of your mental disorder, evidence may document episodes of deterioration that have required you to be hospitalized or absent from work, making it difficult for you to sustain work activity over time.

20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(G)(2)(c).

- 5 -

As Plaintiff points out, the ALJ's discussion of the paragraph C criteria at Step Three was boilerplate. (AR at 2273–74). Further, it does not appear that the ALJ explicitly discussed the paragraph C requirements at any point in the decision. However, the ALJ discussed Plaintiff's SMI (seriously mentally ill) designation, group supported employment, medical treatment, and work and daily activities in Step Four. (AR at 2275–79); *see Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("Even when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may be reasonably discerned.") (internal quotations and citation omitted).

Defendant asserts that "the ALJ discussed that Plaintiff engaged in fairly demanding work activities" (Doc. 11 at 8 (citing AR at 2279)) and that the ALJ's "RFC assessment and discussion of her work activities amply showed that Plaintiff had significant capacity for change and work demands." (*Id.* at 9). The ALJ assessed Plaintiff's activities of daily living which included "performing person [sic] care, preparing simple meals, performing simple household chores, going out alone, and using public transportation." (AR at 2279). In addition, the ALJ considered that, "as early as November 18, 2020 [Plaintiff] was getting paid $150 a week to fold and deliver newspapers 'under the table.'" (*Id.*). Finally, as to Plaintiff's work activities, the ALJ stated that "[r]ecords from Copa Health, exhibit 48F, also show multiple instances in which [Plaintiff] engaged in more than 2 step tasks in a work environment." (*Id.*; *see* AR at 3613, 3617, 3628). The ALJ does not connect these findings to the paragraph C criteria, and the Court finds that this evidence does not constitute an adequate discussion of the ALJ's determination with respect to the paragraph C criteria. *See Marcia*, 900 F.2d at 176.

The ALJ also discussed Plaintiff's mental status exams and psychiatric history, including a history of several inpatient hospitalizations. The ALJ found that although there were instances in the record of exacerbated symptoms, like hospitalizations, Plaintiff's mental exams "reflected generally normal findings except for noted auditory and or visual hallucinations, with some occasions relating to the claimant's endorsement of suicidal ideation." (AR at 2277). To support the contention that mental status exams showed normal

- 6 -

findings, the ALJ cited to ten exhibits totaling over 1,500 pages.[1] As an example, the ALJ highlights one visit in July 2021 where Plaintiff was assessed to have "normal behavior and motor activity, normal gait and station, normal speech, full affect, logical and goal directed though process and associations, no psychosis with thought content, she was alert and oriented, she had fair judgment and insight, language was within normal limits, fund of knowledge was fair, she had within normal limits memory, and she was alert and attentive." AR at 2278 (citing AR at 2170). The ALJ cited four additional behavioral health visits between July and August 2021 showing similar findings. (*Id.* (citing Ex. 38CF)). The ALJ's general assertions about Plaintiff's normal mental findings also do not provide adequate discussion of the ALJ's determination at Step Three.

The ALJ also discussed Plaintiff's hospitalizations in August, September, and November 2021. (AR at 2278). Plaintiff argues that the circumstances surrounding the hospitalizations show marginal adjustment. (Doc. 9 at 10–12). The evidence in the record cited by the ALJ shows that Plaintiff was admitted to the hospital for one week in September 2021 "on a voluntary basis for management of suicidal ideation with plan to run into traffic, psychosis, and paranoid delusions." (AR at 1144). The treatment notes indicate that the "[b]iggest current stressor is housing/possible homelessness within the next few weeks." (*Id.*). The ALJ reasoned that the hospitalization in September was "related to increase in stressors" and that Plaintiff's symptoms improved "significantly" by the end of her hospitalization. (AR at 2278 (citing AR at 1144–45)).

In addition, the ALJ discussed Plaintiff's admission to the hospital on November 24, 2021 for "worsening depression and requested medication dose adjustment," and stated that Plaintiff's exams were "normal . . . except for noted endorsement of suicidal ideations." (*Id.* (citing AR at 1402)). The treatment notes cited by the ALJ reflect that Plaintiff's chief complaint upon admission in November 2021 was "hallucinations to hurt

---

[1] The ALJ cited the following exhibits: C17F which is 79 pages, C26F which is 145 pages, C34F which is 397 pages, C35F which is 107 pages, C37F which is 153 pages, C38F which is 429 pages, C40F which is 63 pages, and C45F–47F which totals over 200 pages. (AR at 2277).

self" and that she was admitted with "auditory hallucination to run into traffic after being left by sister at home for the holiday." (AR at 1402). The ALJ reemphasized that the hospitalization was voluntary, and that Plaintiff was discharged several days later, "and exam results were unremarkable." (AR at 2278). Overall, the ALJ concluded that the evidence of hospitalizations "contributes to the finding the claimant has severe mental impairments . . . [but is] insufficient to support a finding the claimant has disabling limitations to the extent alleged during the period at issue." (*Id.*). It is unclear whether this evidence factored into the ALJ's determination at Step Three, despite its relevance to paragraph C2. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(G)(2)(c) ("[E]vidence may document episodes of deterioration that have required you to be hospitalized or absent from work, making it difficult for you to sustain work activity over time.").

In sum, the Court cannot conclude that the ALJ provided adequate reasons behind the determination that Plaintiff does not meet the paragraph C requirements for Medical Listings 12.03(C), 12.04(C), and/or 12.15(C). It is unclear what evidence supports the ALJ's apparent determination that Plaintiff does not meet the paragraph C2 (marginal adjustment) requirement for the listings above. Although the ALJ is not required to discuss the evidence supporting a Step Three conclusion at any specific point in the decision, *Lewis*, 236 F.3d at 513, the ALJ must still "explain adequately his evaluation of alternative tests and the combine effects of the impairments." *Marcia*, 900 F.2d at 176. The ALJ has not done so here, even though Plaintiff raised the issue at the hearing and in the briefing. *Cf. De Botello*, 2011 WL 3292401, at * 9 (finding the ALJ's Step Three analysis adequate when Plaintiff did not argue for a Medical Listing at the hearing or in the Opening Brief). The Court may only "review the reasons the ALJ asserts" in the decision. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Here, the ALJ failed to assert clear reasons for the Step Three determination, which is especially troublesome in light of evidence showing Plaintiff's ongoing need for support around her mental conditions, including inpatient psychiatric hospitalizations, in response to changes and stressors in her life. Therefore, the ALJ's statement that Plaintiff did not meet or medically equal the listings

was insufficient and constitutes reversible error. *See Marcia*, 900 F.2d at 176.

## IV.   CONCLUSION

Finding error in the ALJ's determination at Step Three, this case will be remanded. *See id.* Accordingly, the Court will not reach Plaintiff's other arguments. *Id.* at 177 n.6 ("Because we remand for reconsideration of step three, we do not reach the other arguments raised."). "[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090,1099 (citation omitted). Plaintiff argues instead that the Court should apply the credit-as-true rule and remand for calculation of benefits. (Doc. 9 at 23). In considering "whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules," the Court finds that further administrative proceedings would be useful to clarify the ALJ's Step Three determination. *Id*. at 1103–04.

Accordingly,

**IT IS ORDERED** that the final decision of the Commissioner of the Social Security Administration is **vacated and remanded** for further proceedings consistent with this order.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and terminate this case.

Dated this 11th day of March, 2026.

Honorable Steven P. Logan
United States District Judge

- 9 -